STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRED-
ERICK LANG, PLAINTIFF IN ERROR.

Argued July 5, 1907—Decided November 18, 1907.

The sixth section of "An act concerning juries" (Revision), approved
    March 27th, 1874, prescribes as qualifications of grand jurors that
    they shall be citizens of this state and residents of the county
    from which they are taken and shall be above the age of twenty-
    one and under the age of sixty-five years, and that if any person
    who is not so qualified shall be summoned as a grand juror it shall
    be good cause of challenge to any such juror, who shall be dis-
    charged upon such challenge being verified according to law or
    on his own oath or affirmation, provided that no exception to any
    such juror on account of his citizenship, age or any other legal
    disability shall be allowed after he has been sworn or affirmed.
    *Held*, that the object of these statutory provisions is to secure an
    effective and representative body of citizens to take part in the
    due administration of the law for the benefit of all who are enti-
    tled to its protection, and not specially or even primarily for the
    benefit of those charged with its violation; and that the classifi-
    cation on which the statute rests is co-extensive with the scope
    of its protection, being nothing less than the entire community,
    law-abiding as well as law-breaking. *Held, also*, that in view of
    this scope of the statute its provision that no exception to a grand
    juror on account of his age shall be allowed after he has been
    sworn does not within the meaning of the first section of the four-
    teenth amendment to the federal constitution deny the equal pro-
    tection of the laws to one indicted for a crime committed after
    such grand juror had been sworn.

---

On error to the Supreme Court.

For the plaintiff in error, *Alan H. Strong.*

For the state, *George Berdine,* prosecutor, and *Aaron V. Dawes.*

The opinion of the court was delivered by

GARRISON, J. This writ of error is directed to the Supreme Court, and brings up with the judgment of that court an indictment for murder and a conviction thereunder in the Middlesex Oyer and Terminer which was upon error affirmed by the Supreme Court. The grand jury that found the indictment was organized on the 3d day of April, 1906, at which time two grand jurors who were above the age of sixty-five years were sworn without challenge. On the 20th day of the same month the plaintiff shot and killed his niece, for which he was indicted by the grand jury which was then sitting. This circumstance, namely, that the two grand jurors who were above the age of sixty-five had been sworn before the offence for which the plaintiff in error was indicted had been committed, gives rise to the main contention upon which counsel relies for the reversal of the judgment contained in this record. The broad contention of counsel in this respect is that section 6 of the revised act concerning juries, which provides that a grand juror who is above the age of sixty-five years shall be discharged if challenged before he is sworn, denies to the plaintiff in error the equal protection of the laws, in violation of the first section of the fourteenth amendment of the constitution of the United States.

This contention is thus concisely stated in the supplemental brief of counsel for the plaintiff in error: "Since the object of the statute directing the discharge, upon the objection of the defendant, of persons returned as jurors, but not possessing the necessary qualifications, was the benefit or protection of the defendant, the right of objection to such unqualified persons must be extended to all who are within the reason of the provision."

The syllogistic argument upon this point is as follows: The right to challenge any grand juror upon any of the statutory grounds contained in section 6 of the Jury act is a legislative measure for the benefit or protection of persons charged

with crime before such grand jury. The plaintiff in error is such a person. But by force of the decision in *State* v. *Hoffman, 42 Vroom* 285, this right of challenge cannot be exercised after the grand jury has been sworn. When this grand jury was sworn the plaintiff in error had not yet committed the offence for which he was indicted, and hence had no opportunity to exercise the right given by the statute. The benefit of the statute therefore does not extend to all who stand in a similar relation to its purpose—that is, all who equally require its protection—hence the plaintiff in error (such is the conclusion) is denied the equal protection of the laws guaranteed to him by the fourteenth amendment of the federal constitution.

This conclusion, it will be observed, rests fundamentally upon the proposition that the right to have a grand juror discharged upon the statutory grounds stated in section 6 of the Jury act is for the benefit or protection of a particular class of persons, whom, to avoid constant paraphrase, we shall call putative criminals. This class includes those who have actually committed crime before the grand jury was sworn, or who at that period were charged with or suspected of crime, or who, being wholly innocent thereof, were ignorant of the fact that they were so suspected, as well as those charged with having committed a crime during the sitting of the grand jury—that is, after the administration of the oath to its members. Inasmuch as the entire class thus constituted stands in a similar relation to what counsel conceives to be the purpose of the statute, and in equal need of its benefit and protection, his contention is that the circumstance that the crime for which a given person was indicted was committed after, rather than before, a given grand juror was sworn is insignificant upon the question of the substantial character of the classification apparently adopted by the legislature, which, unless it be substantial, places the statute under the ban of the fourteenth amendment of the federal constitution.

The question as argued by counsel turns therefore upon the substantial character of the classification of putative criminals into those charged with a crime committed before

the grand jury was sworn and those charged with having committed a crime during its sitting.

The Supreme Court, adopting, provisionally at least, the construction placed upon this statute by counsel, reached the conclusion that the section in question did not violate the federal constitution, because the classification on which it was based was substantial in that it treated alike all persons who were charged with crime under like circumstances and conditions, and that the circumstance that crime was committed at a time when the right of challenge could be exercised rather than after it had expired afforded a substantial basis for classification upon which the denial of such right to persons who fell within the latter class might constitutionally be rested. *State* v. *Lang, ante p.* 1.

Whether, if we were to admit the soundness of the construction placed upon the statute by counsel, we should come to the conclusion that he has reached, or to that reached by the court below, is a matter that need not now detain us, for the reason that in either event such conclusion would, in our judgment, rest upon an essentially mistaken conception of the purpose and scope of the sixth section of the Jury act. In fine, we do not concede that the object of that enactment was the protection of criminals, either actual or putative. Indeed, we see no valid reason for supposing that the statutory grounds of disqualification of grand jurors set forth in the section under consideration were instituted by the legislature for the benefit of any special class of persons, or that the scope of its protection was anything less than the entire community, the law-abiding as well as the law-breaking. On the contrary, in order to state at once the conclusion to which we have come, we think that the purpose of the statute in question was the furtherance of the due and efficient administration of justice for the protection of those against whom crimes might be committed, as well as those who might be charged with the commission of such crimes, and that when the legislature declared that lack of state citizenship or county residence, that non-age or advancing years should constitute disabilities in a grand juror, the object sought to be attained

was to secure an efficient and representative body of citizens to take part in the due administration of the law for the benefit of all who were entitled to its protection, and not specially, or even primarily, for the benefit of those who were charged with its violation. If this be the scope of the statute, the question of the substantial classification of putative criminals upon which the argument of counsel depends drops wholly out of the case, and the matter upon which the court below and counsel for the plaintiff in error are at variance ceases to be of any practical importance.

Our reasons for thinking that the statute has this broader scope are many and various. In the first place, the grounds of the declared disability of grand jurors are all directed at the make-up of that body with respect to its working efficiency and representative character, and are by this feature as widely as possible distinguished from those common-law grounds of challenge for prejudice, malice, ill will, and the like, which, being directed solely against a given person, conferred upon him a personal right of challenge. No reason has been given, and none can be suggested, why a grand juror who was under twenty-one or over sixty-five, or who was not a citizen of the state or a resident of the county, should, on any of these accounts, be either more or less likely to favor the indictment of a given person against whom a criminal charge might be preferred; whereas, upon the other hand, there is every reason why a representative body of men who are to form part of the judicial machinery of a locality should be composed of persons sufficiently identified with the state and county to be citizens of the one and residents of the other, and why a public body of whom responsible and discriminating duties are required should be of an age when judgment is presumably mature and when the physical and intellectual powers have not begun to decline. In this connection the provision of the statute that a challenge for any of the recited disabilities shall, if sustained, lead to the absolute discharge of the grand juror points strongly in the same direction, and serves further to distinguish the purpose of these statutory challenges from those permitted at common law, which resulted

not in the absolute discharge of the challenged juror from the public service, but merely in preventing him from sitting upon the individual case of the challenger. Unless the purpose of the statute was to purge the grand jury for the general good, it is impossible to assign a single reason why a challenge by an individual threatened with indictment should, if sustained, go any further than is required for his individual protection. The further provision of the statute to the effect that grand jurors, although not possessed of the statutory qualifications, may serve upon that body unless challenged before they are sworn points also in the same direction, and militates strongly against the idea that its provisions were deemed essential to the protection of a particular class of persons. The public character of the statute, which we thus find clearly indicated by its terms and inherent in its provisions, is consistent with a rational and entirely practicable scheme for securing the representative character and working efficiency of an important arm of the public service, both in its directory effect upon the officer who selects the grand jury and by the supervision reposed in the public and the court, and as such is free from any element of incongruity or impracticality, while the opposite view, which regards the statute as designed solely for the benefit or protection of those against whom indictments may be found, is so inept to this end and leads to results that are so incongruous, not to say absurd, as to require its rejection if there is any other permissible construction to which such absurdities do not attach. That these elements of ineptitude inevitably result from this latter construction of the statute must be at once apparent to anyone who is at all familiar with the actual procedure by which the grand jury is organized. The sheriff selects the grand jurors, and privately notifies each to be present on the first day of the ensuing term. On that day, immediately after the opening of the court, the clerk calls the list of grand jurors that has been privately furnished to him by the sheriff, and as each grand juror's name is called he comes forward, and when twenty-three or less have thus responded, the oath is administered to the grand jury. This entire procedure, from the

calling of the first grand juror to the conclusion of the oath, occupies but a few moments, while from the calling of the last grand juror to the administration of the oath to the foreman a few seconds only would probably intervene. To assume, as we must do if the contention we are considering is correct, that a right of challenge to be exercised under these conditions and in this brief space of time, without any opportunity being afforded for ascertaining in advance the personnel of the grand jury or any means provided for determining the existence of statutory disqualifications, is a substantial provision for the protection of a privileged class is to assume what is manifestly not so.

If such had been the legislative purpose, it is only fair to presume that some sort of provision for the practical accomplishment of such purpose would have been provided.

I am not, of course, suggesting that persons who are apprehensive of being indicted may not be present, if they choose, at the opening of court and challenge any grand juror upon any of the grounds set forth in this statute, but I am insisting that while such right exists it is not confined by the statute to the particular class to which such persons belong, or intended for their sole benefit and protection. The motive that actuates the challenge of a putative criminal may be different from that of the ordinary person, but his right is no greater. If the object of the statute be to obtain a public body possessing certain qualifications, the motive that directs the attention of the court to the fact that one or more of the persons summoned for service upon such body do not possess the requisite qualifications is quite immaterial, provided the legislative object be thereby forwarded. To this end the legislature may well lay hold of the most diverse motives. In this connection it is most significant that the challenger of a grand juror may be *amicus curiæ,* and this has been the rule of the English courts from an early period. In 2 *Vin. Abr., p.* 475, *lit. "Amicus Curiæ,"* it is said: "Upon an outlawry the question was whether one as *amicus curiæ* might appear and quash an inquisition found upon the outlawry for matter insufficient apparent. Barons Nicholas and Parker take it clearly

upon the book of 7 *E.* 4 that an *amicus curiæ* might show cause to quash the inquisition, and said that Bennett's case, which had been urged to the contrary, went off by the agreement of the parties."

Other instances of the exercise of this right by *amicus curiæ* are given by Mr. Justice Bradley, in *United States* v. *Gale,* 109 *U. S.* 68. Mr. Bishop says: "Doubtless it is competent for the court to permit an *amicus curiæ* to suggest an imperfection in the empaneling of the grand jury." 1 *Bish. Cr. Pro.,* § 877. In our own state the question came before Mr. Justice (now Chancellor) Magie, in the Somerset Oyer and Terminer, in a case reported in 3 *N. J. L. J.* 153, *sub nom., "Challenge to Grand Jury,"* where Mr. Justice Magie is reported to have said: "In the case of the present body, which was empaneled at the first of this term as a grand jury, two objections are made. One comes from the prosecutor of the pleas, who represents the state. In the exercise of his duties representing the state he asks the court to examine alleged irregularities, because, as he says, and with great propriety, the court ought not to proceed to try indictments found by the grand jury in respect to whose constitution and empaneling there is a legal question. The other objection comes from a counselor who as *amicus curiæ,* or as counsel for accused persons now in jail awaiting the action of this grand jury, also interposes objections. An objection may be made by counsel either as *amicus curiæ* or as representing accused persons actually awaiting the action of the grand jury."

Counsel for the plaintiff in error in his brief admits the existence of this practice, and cites several cases that support it, including 9 *Encycl. Pl. & Pr.* 723, *tit. "Friend of Court."* The force of this practice is met in counsel's brief by the suggestion that as such *amicus curiæ* has no remedy by writ of error, the fact that the defendant before the commission of his crime might have acted as *amicus curiæ* does not give him *qua* defendant the equal benefit of the laws, a suggestion which begs the question, and manifestly has no relation to the significant feature of the practice.

Not only does the provision in question fail to afford any practical protection to the class for whose special benefit it is said to have been enacted, but it does not, even in theory, undertake to afford any measure of protection to the only meritorious members of such class, namely, those who, being innocent of crime, are ignorant of the fact that they are even suspected, for the hypothesis under review goes no further than to assume that the statute is of practical benefit to those who are either conscious of guilt or are under apprehension of indictment. This, however, leaves out of consideration all persons who, being absolutely innocent, have no reason to apprehend indictment. Admittedly these persons would derive no benefit at all from the momentary opportunity to challenge afforded by this statute. So that we have as a culminating absurdity that the legislature has extended a special privilege to such members only of the putative criminal class as are either guilty of crime or are conscious of being likely to be indicted therefor, but has provided none at all for those who, being innocent, are not conscious of the need of such protection. Indeed, nothing could be more fantastical than the picture of a concourse of persons apprehensive of indictment gathered at the opening of court to see that the grand jury was composed of resident citizens of the proper age. The irony of such an imaginary concourse is that of those actually under accusation the most part would be in jail; that of those conscious of guilt, but not yet incarcerated, the most part would have fled the jurisdiction, while of those who were conscious neither of guilt nor of accusation the most part would be elsewhere attending to their ordinary affairs.

To impute to the legislature this train of impracticable absurdities, when its enactment is capable of another construction that is at once reasonable, practicable and consistent, is contrary to the canons by which this branch of the judicial function is regulated and controlled.

As against all these considerations there is but a single opposing line of argument, namely, that from the circumstance that the revision of 1874 placed the right of challenge

as to grand jurors in the same section with a similar right  as to petit jurors, the former must be deemed to be for the same purpose and to possess the same attributes as the latter.   Thus counsel in his supplemental brief argues: "The duties of a juror often severely tax the physical as well as the mental powers and endurance.   This is more conspicuously shown in the service upon a petit jury, where a jury not infrequently is required to be kept together over night or longer under constant strain of discussion, and even of heated argument, in the efforts of the members to convince each other and to reach a verdict.   In a capital case (often protracted for many days) the jurors are required to be kept together from the time they are empaneled until the verdict is rendered.   Thus the very life of a defendant may depend upon the physical endurance as well as the mental vigor of those members of the jury who are favorable to him, but who might be obliged to yield their opinion and consent to a verdict against him from inability to hold out longer through the infirmities or impairment of vigor due to advancing years."

It is, however, familiar law that in construing a revision of statutes made by the consolidation of previous acts of the legislature the same meaning should be given to such constituent statutes in their new setting that was accorded to them when enacted, unless a different legislative intent is plainly apparent.   *Clement* v. *Kaighn,* 2 *McCart.* 47; *State* v. *Anderson,* 11 *Vroom* 224; *Smith* v. *Regan,* 25 *Id.* 167; *In re Murphy,* 3 *Zab.* 180; *Fries* v. *Hendrickson,* 16 *Vroom* 555; *O'Hara* v. *Biscuit Company,* 40 *Id.* 198, 202; *State* v. *Hoffman, supra.*

Where such consolidation results in a legislative fiat that differs materially from the mandate of the original statutes, the purpose of the legislature to substitute such later expression of its will for the earlier one is plainly apparent.   Thus the statute now under consideration was held by this court in the case of State *v.* Hoffman to extend to grand jurors the requirement respecting the period within which challenges must be made, although by the original act concerning juries

such requirement was limited to the case of petit jurors. When, however, we pass from the affirmative provisions of a consolidation or revision of statutes to the consideration of the purpose and object of any constituent enactment, we must almost of necessity consider such statute as an independent expression of the legislative will in the light of its original enactment, regardless of its subsequent collocation. There is therefore no controlling force in the suggestion that because the provisions for challenging grand jurors are now coupled with those for challenging petit jurors the object sought to be attained in each case was or is the same, while as a practical matter a moment's reflection will disclose to anyone who is at all acquainted with the widely variant functions of these two bodies that not one of the conditions rehearsed in the foregoing citation from the brief of counsel has any real application to the case of the grand jury. Neither must it be lightly assumed that the word "challenge," as it is employed in the statute with respect to the absolute discharge of a grand juror, has the special meaning in which it is used in the same statute with respect to the petit juror. Primarily the meaning of "challenge" is to call one out to answer for something. Thus, in dueling, "to call a man out" is synonymous with "to challenge" him. Other familiar examples of the use of the word are the challenge of a voter, a challenge by a sentry, or even the challenge of the accuracy of a statement. The matter common to these uses of the word is that of formally directing the attention of someone to a matter that requires his action or decision. In this sense the word is aptly descriptive of the procedure by which the attention of the court is called to the fact that on account of old age or the like a grand juror should be discharged from the public service. On the other hand, the use of the word that has grown up in law with respect to the petit jury is both technical and special, namely, "the demand of a party that a certain person shall not sit in trial upon him or his cause." This special meaning may apply in a measure to the case of a grand juror who is challenged upon common-law grounds, but, as has already

been pointed out, the challenge of grand jurors upon statutory .grounds, if sustained, results not, as at common law, in his refraining from sitting upon the case of the challenger, but in his absolute discharge from the public service. Too much stress therefore must not be laid upon the mere employment of this word without regard to whether its context calls for its general meaning or for its special and technical sense.

The argument of counsel which we have thus rehearsed in no way militates, in our judgment, against the conclusion that the sixth section of the Jury act was intended for the general promotion of efficiency in an arm of the court, and not specially for the benefit or protection of any particular class. The argument that has been erected upon this latter proposition, and upon the supposed necessity of a classification sufficiently broad to include the plaintiff in error, is therefore without legal significance, and falls to the ground.

We reach thus, although upon different grounds, the result reached by the Supreme Court. With the views that obtained in that court we have, for reasons already stated, no present concern, excepting to say that no opinion concerning them need at this time be expressed.

Finally, it should be noted that in all that has been said we have been dealing with the statutory disabilities of grand jurors alone, and upon grounds that are applicable to challenges for such causes only. Whether the words of the statute, "any other legal disability," include the common-law grounds of prejudice, malice, and the like, and if so, what would be the rights and remedies of an indicted person who had had no opportunity to challenge a given grand juror upon these personal grounds, is not involved in the facts of the present case, nor in the line of reasoning upon which, in our judgment, its decision should be placed.

The other grounds assigned for error are fully discussed in the opinion delivered in the Supreme Court by Chief Justice Gummere, in whose conclusions upon these points we entirely concur.

In all respects, therefore, the judgment of the Supreme Court is affirmed.

*For affirmance*—MAGIE, CHANCELLOR, GARRISON, HENDRICKSON, PITNEY, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    11.

*For reversal*—None.