THE STATE, DEFENDANT IN ERROR, v. JOHN ZELLER, PLAINTIFF IN ERROR.

Argued July 12, 1912—Decided November 18, 1912.

The legality of the existence of a grand jury does not depend at all upon the validity or invalidity of the title of the officer by whom that body is selected and summoned. If the title of such officer is colorable, acts done by a grand jury, selected and summoned by him, in the performance of the duty imposed upon it of presenting for trial all violators of the criminal law, are as impregnable against attack as if its members had been selected and summoned by an officer whose title is unimpeachable.

On error to the Supreme Court.

For the plaintiff in error, *Robert S. Hudspeth, Marshall Van Winkle* and *Gilbert Collins.*

For the state, *Pierre P. Garven,* prosecutor of the pleas, and *Robert H. McCarter.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was convicted in the Hudson Oyer on an indictment charging a criminal conspiracy. On a writ of error to the Supreme Court that tribunal affirmed the conviction, and the present writ removes to this court the judgment of affirmance.

At the opening of the September term, 1911, of the Hudson Oyer, the prosecutor of the pleas challenged the array of grand jurors returned by the sheriff, upon the ground that a criminal charge against that officer would be required to be considered and acted upon by the grand jury of that term, and that by reason thereof the sheriff was disqualified to summon them. The court sustained the challenge, discharged the whole panel of grand jurors, and then issued its *venire* to two elisors selected by the court, commanding those officers to summon a new grand jury for that term, and this was done,

the elisors having first been duly sworn into office. Among the indictments presented by this new body was the one upon which the present plaintiff in error was convicted. When he was arraigned before the court he moved to quash the indictment found against him upon the ground that the Court of Oyer and Terminer had no power to disqualify the sheriff for the offence alleged to have been committed by him, and that the challenge of the prosecutor of the pleas therefore should not have been sustained; and upon the further ground that upon the sustaining of the challenge the *venire* for a new grand jury should have gone to the coroners, or to a coroner, and not to elisors appointed by the court. The motion to quash was denied, and this refusal was made one of the grounds upon which the plaintiff in error sought in the Supreme Court a reversal of the conviction against him. The review was had under the one hundred and thirty-sixth section of the Criminal Procedure act, and under that statutory provision the refusal of the motion to quash, although a matter of discretion, constituted good ground for setting aside the conviction if the judicial discretion was improperly exercised.

The grounds upon which the motion to quash was rested were each of them urged before the Supreme Court as requiring a reversal of the conviction. That court held as to the first ground (viz., that the Oyer erred in sustaining the challenge to the grand jury drawn by the sheriff) that the discharge of that body, whether justifiable or not, was a matter of no concern to the plaintiff in error, for the reason that he had no right to have the charge laid against him investigated by that particular grand jury. We concur with the Supreme Court upon this point. The extent of the right of a person charged with crime, in this regard, is that such charge shall be investigated by a grand jury legally constituted, and composed of impartial members. When an indictment is presented against him by such a body its validity is not affected by the fact that the charge was not considered by, or was ignored by, a prior grand jury.

As to the second ground upon which the motion to quash was rested (*i. e.*, that upon the sustaining of the challenge the *venire* for a new grand jury should have gone to the coroners, or a coroner, instead of to elisors), the Supreme Court held that by virtue of section 8 of our act concerning juries (*Comp. Stat.*, p. 2966), the Oyer was vested with discretionary power to issue a *venire* for the summoning of a grand jury either to coroners or to elisors as it should deem advisable, whenever the sheriff of the county was disqualified from the performance of that duty, and that, therefore, this ground also was without merit.

The statutory provision appealed to is in the following words: "That every grand and petit juror shall be summoned by the sheriff or his deputy, or by one of the coroners or elisors when the *venire* shall be awarded to the coroners or elisors, by notice in writing, under his or their hands, and served either personally, or left at the dwelling-house of such juror, six days at least before the day on which such juror is required to appear." It is argued before us that the Supreme Court erred in considering that this statute conferred upon the Oyer the power of determining by what officers a grand jury should be *selected* in case of the disqualification of the sheriff, the suggestion of counsel being that it only deals with the summoning of the members of that body, after its membership has been ascertained by a prior selection from among the body of the qualified citizens of the county. It is true that the statute speaks of summoning, not of selecting, grand jurors; but by necessary implication it contains a legislative recognition of the fact that there may be conditions which would render it improper to commit the selection of grand jurors to either the sheriff or the coroners of the county, and deals with those conditions; for it cannot be supposed that the legislature contemplated the existence of a situation which would render it improper to permit those officers to perform the mere manual labor of leaving written notices with persons who had been selected as members of a grand jury, and yet which would not render it improper for such officers to select such members. That power exists in the Oyer to appoint elisors

to select and summon grand jurors in a proper case—certainly when both the sheriff and the coroners are disqualified to perform such services—we have no doubt. The fact that no case can be found in the books in which the existence of such a power has been declared (if such be the fact, as counsel for plaintiff in error assert) is unimportant, the probable reason for such absence of decision being that no one up to the present time has ever thought of challenging its existence.

Whether the statute confers power upon the court to issue its precept to elisors, rather than to coroners, in case of the disqualification of the sheriff, is a much more doubtful question, and one upon which we are not all agreed. But assuming that the construction put upon the statute by the Supreme Court is erroneous what is the situation? The original grand jury drawn by the sheriff having been discharged from service, the sheriff being disqualified to act in selecting and summoning a new one, and the Oyer having power to cause such new grand jury to be selected and summoned, the question was presented to that court by what officer or officers shall that duty be performed? The determination of that question involved the construction of the eighth section of the act concerning juries. Construing it, as the Supreme Court did afterward, the Oyer, considering that it would make for the better administration of justice not to have the grand jury selected by coroners, thereupon appointed elisors, and issued its *venire* to those officers, who, in obedience to the command of the writ, caused the members of the grand jury which presented the indictment against the plaintiff in error to come before the court. That these members were properly sworn as grand jurors, that they were good and lawful men duly qualified to serve as such, and that they were wholly impartial as between the state and the plaintiff in error, is not denied. The case then resolves itself into this, can a person under indictment successfully challenge a grand jury so constituted upon the ground that the title of the officers by whom it was selected and summoned is invalid? It has never been suggested, so far as I know, that a person against whom an in-

dictment has been presented by a grand jury may defeat a prosecution under it by showing that the sheriff who selected and summoned the grand jury by which it was found was not entitled to hold the office of which he was the incumbent because he was not eligible thereto, or had not been duly elected to it, or for any other reason. And, yet, if the invalidity of the title of the elisors in this case to the office to which they were appointed by the Oyer can be made the basis of overthrowing an indictment found by a grand jury summoned by them, it must be equally true that the same result must follow in the case of an indictment found by a grand jury summoned by a sheriff who was not legally entitled to hold the office which he filled. That the title of the incumbent to an office cannot be attacked in this collateral way, we think, entirely settled. The validity of his acts, so far as they affect the public, or individuals, does not at all depend upon the perfectness of his title thereto; it is enough if that title be a colorable one. As was said by Chief Justice Magie, speaking for this court in *Erwin* v. *Jersey City*, 31 *Vroom* 141: "When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public, whom he represents, and to third persons with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so." In using this language the learned jurist exploited no novel doctrine, but merely gave expression to a legal principle which has been universally adopted by courts which administer the law under common law rules. Its application to the present case demonstrates that the legality of the existence of the grand jury which presented the indictment against the plaintiff in error did not depend at all upon the validity, or invalidity, of the title of the officers by whom that body was selected and summoned, and that acts done by it in the performance of the duty imposed upon it of presenting for trial all violators of the criminal law, are as impregnable against attack as if they had been selected and summoned by an officer

whose authority to do so was beyond question. For this reason we think the second ground upon which the motion to quash was rested was without substance.

None of the other assignments of error having been considered worthy of discussion by counsel, either in the oral argument had before us, or in the briefs submitted, we have treated them as being abandoned, and for this reason have not taken them under consideration.

The judgment under review will be affirmed.

GARRISON, J. (dissenting). If our Courts of Oyer and Terminer have the inherent authority to call into being grand juries selected by court appointees, which is the major premise of the conclusion that has been reached, I could probably concur in the minor propositions discussed in the opinion.

As it is, I have given them scant consideration, for the reason that I have been unable to discover a vestige of such authority, real or apparent, in the criminal courts of this state or in those of the mother country. The absence of such authority in the courts of this state is accounted for by its absence in the courts of England, but the absence of any indication of such an authority in the courts of England cannot be accounted for upon the supposition that such authority was so universally conceded that no one ever thought of challenging its existence or of noting its exercise. Such a supposition ignores alike the history of the English constitution and the fullness and fidelity of her legal literature. Rather is it that the existence of such authority was so plainly repugnant to the bill of rights that no court in England, since Magna Charta, has ever thought of exercising it. For the significance of the historic pledge of the English king that no subject should be put to criminal trial unless upon presentment by the grand inquest lay in the fact that the grand inquest was selected by the sheriff of the county or the coroners, whereas the "inquests for the hundreds," which had persisted since Bracton's time, were, oftener than not, selected by the appointees of the king's judges. It was precisely at this practice that the paramount provision of Magna Charta was directly

aimed. To say that the desired result was not attained is to rewrite history; to say that it was attained but that the reprobated practice was suffered to be resumed by the king's judges not only without challenge but without ever attracting the attention of legal historians is at once to misconceive the temper of the English people and to undervalue the historians of their law. If such had been the fact, some case, one at the very least, would have been recorded, and, what is more, would have figured large in the history of English constitutional law.

The selection of a grand jury by *elisors* is a subject upon which the literature of the English law is silent, and there is no other source of information as to the law except its literature. The reason why the term "elisor," and the notion conveyed by it, are confined in the literature of the law to trial juries, is explained by this paramount provision of the bill of rights which did not admit of the resumption by the courts of the power that had been taken from them, *i. e.*, the selection of the grand inquest by appointees of the judges of Assize. The term "elisor" means, in the law, an officer appointed by a trial court to select a trial jury.

To pursue this matter to a demonstration is, however, no part of the purpose of this memorandum, the sole object of which is to point out that my vote is based not upon any dissent from the minor propositions discussed in the opinion of the court, but upon the erroneous premise to which such propositions are applied, viz., that the Court of Oyer and Terminer has authority to appoint elisors to select grand jurors.

An elisor-drawn grand jury is, therefore, a legal anomaly that results in the violation of the provision of section 9 of article 1 of our constitution, which says: "No person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury," for a body of citizens got together by persons occupying no office known to the law and whom the court had no power to appoint to the performance of that official duty is not a grand jury. Whether a conviction under an indictment presented by such a body is "due

process of law" is within the discussion although not within the decision in *Hurtado* v. *California*, 110 *U. S.* 516.

I vote to reverse the judgment in this case.

Mr. Justice Minturn requests me to say that he concurs in the foregoing view which is the ground upon which he also votes to reverse.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, VOORHEES, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 9.

*For reversal*—GARRISON, MINTURN, JJ. 2.