THE STATE OF NEW JERSEY, DEFENDANT IN ERROR,
v. JAMES PROFITA, FRANK FAILLA, JOHN CAMMA-
RIATO AND HARRY KULLER, PLAINTIFFS IN ERROR.

Submitted May 11, 1934—Decided September 28, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the plaintiffs in error, *Minturn & Weinberger, Chandless, Weller & Selser* and *John W. Griggs.*

For the defendant in error, *James D. Carpenter, Jr.,* and *Michael Shershin.*

The opinion of the court was delivered by

BODINE, J. The defendants were convicted of conspiracy. A plea of not guilty was withdrawn in order that a motion might be made to quash the indictment. The motion was denied. The clerk of the court, however, did not reinstate the plea. Notwithstanding, the jury was drawn and the case proceeded with the observation of every formality. Motions for a directed verdict were denied, both at the close of the

state's case and at the close of the entire case. Counsel summed up in the usual manner and the jury was charged. There is nothing to suggest that there was not an issue which the court was trying in a most solemn and legal manner, in accordance with the settled practice in our courts.

The failure to reinstate the plea of not guilty is urged first as a ground of reversal. Defendants rely upon the cases of *State* v. *Brennan,* 83 *N. J. L.* 12, and *State* v. *Acton,* 109 *Id.* 34. The Court of Errors and Appeals by failing to approve discountenanced the rule in the Brennan case. 110 *Id.* 449. It is noteworthy that in the Acton case the state did not appear in the Supreme Court. It is, therefore, apparent that the question was never fully argued. We view the question distinctly open in this court, as well as in the Court of Errors and Appeals. In the case of *State* v. *Berrian,* 22 *Id.* 9, 30, it was said: "In Harris' case (2 *Cro.* 502), upon an indictment for nuisance the record was removed, after conviction, into the King's Bench by *certiorari:* on examination of the record, it appeared that no issue was joined, and so the verdict was without issue. The court, upon motion, ordered it to be amended, by the insertion of the *similiter;* for it was but matter of course, and by intendment was omitted in the entry by default of the clerk."

In the case at bar the reinstatement of the plea of not guilty was but a matter of course. A question from the clerk would have elicited the answer. The defendants, represented by able counsel, well knew that they were being tried. There seems to be no valid reason why this court should indulge in the solemn farce of reversing the judgment below upon the ground that there was no issue tried. The parties concerned and every bystander knew there was one. The court should follow the practice which anciently obtained, when criminal proceedings were far more strict, and order the record amended to show the plea of not guilty reinstated as it should have been, and would have been but for the default of the clerk of the court.

There was no doubt of the identity of the accused. The

defendants were represented by counsel who knew full well the very nature of the charge. Further, they had entered a plea which was withdrawn by leave of the court in order that motions which were later denied might be entertained. The reinstatement of the plea of not guilty by the clerk of the court was a formality of the most trivial sort. We think the true rule is stated in 16 *Corp. Jur.* 388, as follows: "It has been held that where the plea is withdrawn, conditionally, for a special purpose, and the purpose fails, the effect is to re-enter the withdrawn plea, and no formal entry is necessary."

The record before us contains none of the testimony produced at the trial. The indictment we regard as neither harmfully duplicitous, vague, uncertain or otherwise invalid or improper. It charges a conspiracy and alleges various overt acts done in pursuance thereof. We cannot find that it charges other distinct and separate offenses. It is perfectly clear that the crime charged was a conspiracy to distribute slot machines for operations for gambling purposes. Some phrases inartistic and unnecessary may be regarded as surplusage. There is nothing in the language of the indictment nor the record in the case to suggest that overt acts prior to the date of the alleged conspiracy were pleaded or proved. The indictment charges a crime, the nature of which the defendants must well have understood. The validity of its formal parts is not challenged. We need only say that to us it is a clear and explicit charge of criminality which the defendants could well understand. Their conviction affords them immunity from further prosecution for the same offense.

The senate, being in recess, and the office of jury commissioner in Passaic county being vacant, the justice of the Supreme Court holding the circuit appointed elisors to summon and impanel the grand and petit jurors. There was a challenge to the array of petit jurors, which was denied. This action is assigned as error.

In the case of *State* v. *Zeller*, 83 *N. J. L.* 666, it was held by the Court of Errors and Appeals (Chief Justice Gummere speaking for the court) that "the legality of the existence

of a grand jury does not depend at all upon the validity or invalidity of the title of the officer by whom that body is selected and summoned. If the title of such officer is colorable, acts done by a grand jury, selected and summoned by him, in the performance of the duty imposed upon it of presenting for trial all violators of the criminal law, are as impregnable against attack as if its members had been selected and summoned by an officer whose title is unimpeachable."

It would seem to follow that there could be no attack upon the petit jury selected and summoned by elisors designated by a justice of this court. "As was said by Chief Justice Magie, speaking for this court, in *Erwin* v. *Jersey City,* 31 *Vr.* 141: 'When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public, whom he represents, and to third persons with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so.' In using this language the learned jurist exploited no novel doctrine, but merely gave expression to a legal principle which has been universally adopted by courts which administer the law under common law rules." *State* v. *Zeller,* 83 *N. J. L.* 670.

There is nothing before us to show that there was no necessity for the action taken or that the discretion vested in the justice naming the elisors was not properly exercised. *State* v. *Kuehnle,* 85 *N. J. L.* 220.

It was held in *State* v. *Bolitho,* 103 *N. J. L.* 246; *affirmed,* 104 *Id.* 446, that: "The provisions of section 8 of the Jury act (*Rev.* 1877, *p.* 532; *Comp. Stat., p.* 2966), in so far as it authorized the appointment of elisors and confers the power upon them to select and summon grand and petit jurors is not inconsistent with the provisions of the Chancellor-Sheriff act. *Pamph. L.* 1913, *p.* 833."

It is, however, argued that since the appointment of elisors

deprived the sheriff, without cause, of his partial function to call jurors the action was illegal. Since the sheriff alone was powerless to summon jurors and since the justice of the Supreme Court could not select a jury commissioner to act with the sheriff, the trial of all causes must, but for the action taken, have been suspended until a jury commissioner should be confirmed by a senate not then in session. It cannot, for one moment, be supposed that the courts of this state are powerless to cause jurors to be summoned so that issues may be tried in the courts of this state. It is not, for a moment, to be supposed that the Supreme Court ever possessed such limited power or that the legislature ever so intended. When, for any valid reason, jurors cannot be obtained by the commissioners provided by law the court may act as has been done on many occasions.

Points 4 and 5 we cannot consider because they are based upon alleged failure of the state to prove its case. Since we have not been supplied with the testimony and are furnished with no argument we can only record the fact and suggest that the statement of counsel as to what the court should have done is no real substitute for the record and the argument of the case.

We can find no error in that portion of the court's charge in which was recited the provision of section 37 of the Crimes act. 2 *Comp. Stat.*, *p.* 1757. There was no error in sending the indictment into the jury room. In fact, such is the usual practice. Nor do we regard the requests to charge, which it is said the court failed to observe, as proper. But assuming that they were, it seems to us clear that the court did charge the jury, as the draftsman of the requests must have intended, and in a legal manner.

The judgments will be affirmed.