STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. NICHO-
LAS A. CIOFFE AND ALFRED F. DUGGAN, PLAINTIFFS
IN ERROR.

Submitted January 20, 1942—Decided May 2, 1942.

Before BROGAN, CHIEF JUSTICE, and Justice HEHER.

For the defendant in error, *John J. Quinn,* Prosecutor of the Pleas in the County of Monmouth.

For the plaintiffs in error, *Edward F. Juska.*

BROGAN, CHIEF JUSTICE. The plaintiffs in error, Alfred F. Duggan and Nicholas A. Cioffe, were convicted of robbery in the Monmouth County Quarter Sessions and jail sentence was imposed upon each. The indictment charged that the defendants held up and robbed two bank messengers, Joseph Sturm and J. Clarence Barton, of a sum of money ($108,000) · at the City of Asbury Park, New Jersey, on the morning of July 30th, 1940.

The assignments of error and specification of causes for reversal (eighty-three in number) are argued under nineteen headings. The case was submitted on brief. The points made will be considered in the order in which the brief presents them.

The state called witnesses at the trial, whose testimony tended to establish that in the month of July, 1940, the plaintiff in error, Duggan, and one Martin Deevy occupied a bungalow at Navesink in the County of Monmouth, which they rented from its owner, J. Harry Purvis, for the summer months. The plaintiff in error, Cioffe, is not revealed as having lived at the bungalow or even having visited it any time. The robbery took place at approximately eleven o'clock in the morning on July 30th, 1940. The bank messengers at that time were engaged in transferring the money in their custody from the Asbury Park National Bank to the United States post office building for shipment via American Express Company; the bank messengers used an automobile for that purpose and, having parked the car in front of the post office, were in the act of carrying the money from the car to the post office building when they were held up, at the point of a revolver, and robbed. The hold-up men then proceeded to an automobile, stationed across the way, and drove off. Cioffe was identified as the robber who had carried the revolver at the time of the hold-up. Duggan, observed by one witness leaving the scene of the crime in the car driven by Cioffe, was later identified by the witness in a jail in Jersey City, New Jersey, where he was a prisoner. The automobile, used for the escape from the scene of the robbery, was later found near

Bound Brook, New Jersey, abandoned. It contained certain articles which were identified as having been used or worn by Cioffe at the time the crime was committed—sun-glasses and gloves—and also the bags which had contained the money intended for shipment.

The defense offered for each defendant was alibi. Cioffe said and produced testimony to support his statement that on the morning of July 30th, 1940, he was in Essex County, New Jersey, working for his father-in-law; and Duggan contended and produced witnesses to prove that he spent the greater part of the day, on which the crime was committed, on the beach at Seabright, New Jersey, in the company of his friend, Martin Deevy, and a Miss Simpson.

The main assignments of error challenge the court's jurisdiction, in that the jury was not "lawfully constituted;" set up the plea *autrefois acquit,* in that in the United States District Court these defendants were acquitted on the trial of an indictment for the same offense; and assert alleged errors in the course of the trial in the rulings of the trial judge on matters of evidence and in sundry other particulars.

The brief for the plaintiffs in error presents argument as though this proceeding on writ of error was under the one hundred and thirty-sixth section of the Criminal Procedure Act (*R. S.* 2:195-16). But it is not. We find no certificate of the trial judge authenticating the record of the proceedings had upon the trial. The trial judge made return to the writ of error which issued out of this court and certified to us "the record and proceedings whereof mention" is made in the writ. This is merely a formal return and does not comprehend the entire record but only those matters referred to in the writ and those, of course, include only matters to which proper objection and exception were made and noted and which were signed and sealed by the trial judge. Since the certificate of the trial judge does not embrace the entire record we shall not consider the specified "causes for reversal." The case is here on strict bill of exceptions. *Cf. State* v. *Hendrick,* 70 *N. J. L.* 41; 56 *Atl. Rep.* 247 (*R. S.* 2:195-14; 2:195-16; 2:195-18); *State* v. *Clark,* 75 *N. J. L.* 473; 68 *Atl. Rep.* 114; *State* v. *Samaha,* 93 *N. J. L.* 482; 108 *Atl. Rep.* 254.

The first point (assignments 3, 7, 76 and 79) says it was error to deny the following motions: (a) to quash the indictment; (b) the challenge to the array, and (c) in arrest of judgment. All three matters were argued on the theory that the acts of the "commissioners of juries" in the premises were void. It appears that the "citizen" commissioner, who with the sheriff constituted the statutory authority—"commissioners of juries," was ineligible to occupy this office. It is also urged that it was error to refuse defendants' request to charge No. 9. This point should be disposed of first. The pith of the argument is that the grand jury was illegally impaneled because there was no *de jure* commissioners of juries in existence at the time the grand jury was impaneled, and the request was, that if the jury so found, they should return a verdict of "Not Guilty." This request was properly refused. The matter was one of law. The jury was not competent to pass on the question. The facts are that the appointed "citizen" commissioner of juries Carl Schroeder, was, on May 16th, 1939, elected a member of the governing body of the Borough of Belmar. This post is a public office. On April 16th, 1940, he was appointed a jury commissioner by the Justice of the Supreme Court assigned to the district of which Monmouth County is part. Mr. Schroeder acted as such commissioner from the date of his appointment until a year thence, that is, April 19th, 1941. During that interval the grand and petit jury lists were made up by Mr. Schroeder and the sheriff of Monmouth County. Our statute *R. S.* 2:87-5 provides: "The office of a jury commissioner appointed pursuant to section 2:87-1 of this title shall become vacant immediately upon his assuming the duties of any other public office." The statute 2:87-1 prescribes the qualifications that such citizen shall have in order to make him eligible as one of the commissioners of juries. It provides, among other things, "No person holding any other public office  *  *  * shall be appointed as a commissioner of juries." It is conceded that Mr. Schroeder, during the interval he served as one of the commissioners of juries, did hold other public office. The trial court held that Mr. Schroeder was a *de facto* jury commissioner and that the validity of the indictments

was not affected. The motions to quash the indictments, challenging the array of the traverse jury in arrest of judgment, and the request to charge outlined above, were rejected. These rulings were correct. As a general rule, the acts of a *de facto* officer are valid and that is especially true where, as here, the existence of the office *de jure* cannot be challenged. Nor can it be gainsaid that Mr. Schroeder held the office by color of right. An ineligible person may act as a *de facto* officer. *State* v. *Anderson,* 1 *N. J. L.* 366 (318); *Dugan* v. *Farrier,* 47 *Id.* 383; *Oliver* v. *Jersey City,* 63 *Id.* 634. This principle, firmly imbedded in our law, is necessarily one of convenience. The inconvenience to the public would be intolerable if one had to be assured before dealing with a public officer that the official had title *de jure.* When Mr. Schroeder was appointed he was ineligible. That he was disqualified was in all probability unknown to him and to the court which selected him. However, no special injury resulted from this happening. The plaintiffs in error did not suffer thereby nor do they claim that they did. Compare *State* v. *Zeller,* 83 *Id.* 666; 85 *Atl. Rep.* 237; *State* v. *Carlino,* 98 *N. J. L.* 48; 118 *Atl. Rep.* 784; *affirmed,* 99 *N. J. L.* 292; 122 *Atl. Rep.* 830; *State* v. *Profita,* 113 *N. J. L.* 330; 174 *Atl. Rep.* 548; *affirmed,* 114 *N. J. L.* 334; 176 *Atl. Rep.* 683.

The second point (assignments 5, 6 and 79) presents argument that the written plea *autrefois acquit* should have prevailed as a matter of law. The plea avers that on November 29th, 1940, the federal grand jury indicted the defendants for the same robbery; that they were tried January 16th, 1941, and acquitted by a jury in the United States District Court. It is undisputed that the trial in the federal court was for the same offense and it is contended that having been acquitted in that tribunal the defendants could not be put to double jeopardy and tried again in a state court. This contention is not sound. The offense in question at once violated the Federal Criminal Code in that the bank whose money was stolen was a national bank; and it also offended against the Crimes Act of this state. Two different sovereignties were offended. The acquittal or conviction in the criminal tribunal of one sovereignty creates no barrier to prosecution by the

other for a crime arising out of the same act. *Cf. Hebert* v. *Louisiana*, 272 *U. S.* 312; *United States* v. *Lanza*, 260 *Id.* 377. The peace and dignity of each government, state and national, was offended and each is competent independently to deal with the offenders and punish in case of conviction. See, also, *U. S. C. A. Title* 12, § 588, *subsection D*.

It is also said under this heading that a jury should have been impaneled to hear and determine the validity of the. plea *autrefois acquit.* A motion to that effect was denied. We do not consider that legal error resulted. The proceedings seemingly were informal and there was no objection made. No replication traversing the allegations of the plea was filed; nor demurrer. No fact issue was involved, since the state conceded the identity of the offense and the person. The state's attorney simply stated that in the circumstances the plea of former acquittal was inefficacious. And it was. The question presented was one of law. The jury was neither necessary to decide any fact nor competent to deal with the legal question. The authority of *State* v. *Ackerman,* 64 *N. J. L.* 100; 45 *Atl. Rep.* 27, cited by the plaintiffs in error, is altogether inept.

It is next argued (assignments 8 and 82) that the court erred "in denying the motion of plaintiffs in error to quash the second special panel [of jurors] served upon the plaintiffs in error for the trial which commenced on April 15th, 1941." The circumstances of the matter were that on April 15th, a special panel of jurors was served upon the plaintiffs in error; that the trial date was fixed for Tuesday, April 22d, 1941; that the trial was then adjourned until Monday, April 28th; that on Wednesday, April 23d, Mr. Schroeder, the jury commissioner, was succeeded by Eugene Lowenstein; that on Thursday, April 24th, a new special panel of jurors was served upon the plaintiffs in error. From this it is argued that the statute *R. S.* 2:91-2 which has to do with "the special panel of trial jurors for the trial of criminal cases drawn from the general panel" does not permit of the selection of more than one such special panel of jurors. The statute speaks of "*a* list of the jury" and the argument is that the statute provides that only one such list may be drawn and served on a

defendant; that if the situation were otherwise the provision of the statute would be cast in the plural number. In this case the second list was made up because some jurors on the first list of forty-eight had been excused. This procedure was permissible. To adopt the defendants' reasoning would mean that even though half the list had been excused or failed to appear for any reason the result could well be a complete failure to obtain a jury. Compare *State* v. *Mohr,* 99 *N. J. L.* 124; 122 *Atl. Rep.* 837. The Court of Errors and Appeals, in that case, passed upon the primary purpose of this same statute (then known as section 82 of the Criminal Procedure Act; *Comp. Stat., p.* 1847) and said the drawing of one special panel did not exhaust the power to have further and other lists of jurors selected. The constricted construction sought by plaintiffs in error would lead to results manifestly absurd and certainly at variance with legislative intention. The purpose of the enactment is to protect the interests of the defendant and the state by providing a panel sufficient in number to afford each party the right of challenge to its fullest extent and the court may make as many orders from time to time for the accomplishment of that purpose as arising conditions may require. In this case it is not claimed that plaintiffs in error were prejudiced in any way. To the contrary, when the jury was finally selected, defendants' trial counsel stated that the jury was satisfactory.

The next point (assignments 9 and 81) charges error in refusal of motion to quash the special panel of jurors from which the jury was drawn to determine the issue in this case and that it was error to deny motion to arrest judgment. It is pointed out that the jury commissioner, Mr. Lowenstein, had been a member of the grand jury of Monmouth County, which returned the indictment. No injury is claimed by the defendants—indeed it is conceded that there was no evidence to justify such a claim. The argument seems to be that such a rule would be salutary. No authority is cited to support this conception. Mr. Lowenstein was the *de jure* commissioner of juries and in the absence of prejudice, which is not claimed, the fact that some months previously he had been a member of a grand jury which returned the indictment in the

cause is of no moment. Compare *State* v. *Simmons,* 120 *N. J. L.* 85; 198 *Atl. Rep.* 294.

The next point (assignment No. 10) is that the "names of the jurors were not legally drawn from the box by the sheriff" and is based upon a provision of the statute (*R. S.* 2:91-1) that the names of petit jurors summoned and returned by the sheriff shall be written or printed on separate pieces of paper, uniform in size, color and shape, and that each piece of paper shall be separately rolled up by the sheriff or by a person designated for that purpose and deposited in the box. Counsel for defendants said he noticed that the pieces of paper were not separately rolled up by the sheriff and that therefore the jury was not selected legally. No mention was made of this at the time the alleged irregularity was noticed and there is no claim of prejudice. No disadvantage to the defendants is asserted. If there was any substance to the point the informality should have been called to the court's attention when it occurred. In any event, a provision of this kind is merely directory and has no importance unless it appears that the rights of the defendants were prejudiced. Finally there was no ruling requested, consequently nothing to review here. *State* v. *Simmons, supra;* compare *State* v. *Calabrese,* 107 *N. J. L.* 115; 151 *Atl. Rep.* 781; *Armbruster* v. *National Bank,* 120 *N. J. L.* 178.

The next point (assignments 12 to 15) challenges the testimony of the witness, Bennett, and the reception in evidence of a pair of gloves and a pair of sun-glasses. The witness, Bennett, testified that defendant, Cioffe, wore sun glasses and grey cloth or cotton gloves at the time of the robbery. The state's attorney exhibited the gloves to the witness and asked him if he could identify them. He replied that they looked similar to those worn by Cioffe on the day in question. At that juncture objection was made by counsel for the defense who requested that the answer be struck out. The objection was overruled and this is assigned as error. The gloves were merely marked for identification. The objection was late. It was made after the question was answered and it is not said that the witness responded too quickly to permit of counsel's objection. The court also refused to strike out the

answer. The reason advanced by counsel on this motion was that the answer was not responsive. The ruling of the court was proper. Examining counsel may have an irresponsive answer struck out. Opposing counsel may not have the testimony of his adversary's witness struck out unless it is incompetent. *State* v. *Bleefield*, 115 *N. J. L.* 76; 178 *Atl. Rep.* 561; *affirmed*, 115 *N. J. L.* 559; 181 *Atl. Rep.* 168. At this juncture the gloves and the glasses, allegedly worn by Cioffe when engaged in the robbery, were received in evidence. These exhibits had first been properly identified by Joseph O'Neill, a member of the police department of the City of Orange, as having been found in Cioffe's automobile in October, 1940. It is further said, with regard to the testimony given by the witnesses, Mr. Bennett and Mr. O'Neill, and the admission in evidence of the exhibits mentioned, that all this, while affecting Cioffe, was prejudicial to the defendant Duggan. But the objections entered by counsel were general. The court was not asked to limit the scope of the testimony to Cioffe to the exclusion of Duggan except in one instance. Even then counsel was not specific. He moved that certain testimony of Mr. Bennett (a witness for the state) on direct examination, be struck out and added: "The testimony was not binding on the defendants or either of them," to which the court replied that it "certainly was not binding on Duggan" but only Cioffe. Such a statement exhibited due regard for the fact that the evidence was limited to Cioffe and we cannot imagine the jury failing to understand the limitation.

Under the next point (specifications 17 to 20) error is charged in the admission of certain testimony from J. Harry Purvis. This witness, it will be remembered, had rented the bungalow at Navesink to Duggan. Again, objection was made after the answer had been given. No reason was advanced in support of the objection. Then motion to strike out the answer was made on the ground that the testimony was immaterial, irrelevant and incompetent. The answer of the witness was competent. As pointed out above, adverse counsel may not have an answer given on examination of his opponent struck out if the answer is competent. *State* v. *Bleefield*, *supra*. The witness stated that Duggan occupied the house

at Navesink until July 29th, 1940. He was in a position to know since he was the owner of the house and visited the premises at that time. We perceive no merit in the objection. A second question to the same witness is assigned for error. The question was whether Mr. Purvis went to the bungalow on the morning of July 30th. The witness answered, "yes." How this is prejudicial error it is impossible to perceive. Another question assigned for error elicited the information that the witness visited the bungalow at 7:45 in the morning. Asked about the interior of the house, the witness answered that the "personal clothes" of Duggan were missing. The brief of the plaintiffs in error stresses what is said to be conflict in the testimony of this witness, *i. e.,* that Mr. Purvis said that he made a mark on a calendar of the date thus fixing July 30th as the last day he saw Duggan at the bungalow; that previously he had said it was July 29th. However, the witness corrected this discrepancy in his testimony. Assuming that there was a real conflict, this does not result in the rejection of his evidence. It affects its weight—nothing more. Compare *Weilbacher* v. *Rudlin,* 125 *N. J. L.* 631; *Hughes* v. *Rankin Realty Co.,* 108 *Id.* 485, 487; 158 *Atl. Rep.* 487.

Under the eighth point (assignment 1) is argued that it was error to allow a certain question and answer on redirect examination. But—even though the testimony should have been brought out on direct examination, or is repetitious—this is a matter resting in the discretion of the trial judge. In any event, allowing a question on redirect examination that should have been asked on direct examination may not be assigned for legal error. Nor does the fact that the testimony was repetitious afford any ground for reversal. *State* v. *Mohr, supra.* Under the facts of this case, if the allowance of the question and answer on redirect examination had the effect of minimizing the damage done the witness' story by cross-examination, as counsel contends, this was all a proper matter for argument before the jury and for the jury's appraisal of the evidence. It was not legal error.

It is next argued under points 9 and 10 (assignments 22 and 24) that it was error to overrule a question addressed to a witness (Mrs. Caplan). We do not think the matter merits

any discussion. It is also said that legal error resulted from allowing a certain question to another witness (Mr. Prescott). We find no reason offered in support of the objection. It is therefore ineffectual.

The next point (assignment No. 25) argues that legal error resulted from the court's refusal to direct a verdict in favor of Duggan at the end of the state's case. The reason advanced was alleged lack of proof of Duggan's guilt. The motion was properly denied. A witness, Mrs. Caplan, identified Duggan as one of those who left the scene of the crime in an automobile. Whether that evidence in the circumstances was sufficient to establish him as a participant in the crime beyond a reasonable doubt was for the jury alone. *State* v. *Morehous,* 97 *N. J. L.* 285; 117 *Atl. Rep.* 296.

Points 12, 13, 14 and 15 (assignments 32 to 39, 46, 47, 48, 58, 59 and 60) have to do with the cross-examination of Cioffe and Duggan. It is said that the questions on cross-examination by the state's attorney were immaterial, collateral to the issue, and generally objectionable. On direct examination Cioffe had denied participation in the crime and said he was elsewhere than in Asbury Park at the time. On cross-examination, after the witness had admitted that he made his living selling betting pads, dice and paraphernalia of this character throughout the state, and that at intervals he worked for his father-in-law, a contractor, the state's attorney asked the witness if he knew a man called "Gyp De Carlo" and when and where he had last seen him. These matters are said by counsel for plaintiffs in error to be incompetent. We are not sure we understand counsel. The witness answered many of the questions to which counsel objected by saying he had no knowledge on the several matters on which he was interrogated. The objection to certain cross-examination of Duggan was made along the same tenor. One of the primary purposes of cross-examination is to test the credibility of a witness. Obviously great latitude is necessary for thorough cross-examination and any questions tending to test the prejudice, interest, recollection and truthfulness of a witness. *i. e.,* directed to his trustworthiness, are generally permissible. These questions were of that character. They violated no rights of the defendants.

Under the sixteenth point (assignment No. 75) error is asserted in the refusal of the court, at the end of the summation by the prosecutor, to strike out certain portions thereof. Then motion for mistrial was made and denied. The parts of summation to which objection was made were those which portrayed Duggan as a conveyor of "dope * * * used to kill persons." This comment was not improper in view of the fact that Duggan admitted having been convicted of "possessing, concealment .and facilitating transportation of narcotics." His criminal record was in evidence without objection. Again complaint was made that the prosecutor said: "If this is so * * * that unholy seed must be uprooted;" and made reference to Duggan as the "gentleman from the penitentiary" and, a further bit of summation regarding Cioffe, "* * * you can thank your God that you didn't get nervous that day with this boy Barton [the bank messenger against whose back a revolver was held at the time of the robbery]. Just the slightest pull of that trigger, ladies and gentlemen, and the boy was gone." Reference was made to the defendants as a "scourge coming into the county;" "users of guns;" "source of seeds which must be removed," &c.—graphic language, it is true, but justified by the evidence. This case was thoroughly tried by both sides. It was important to the state and vital to the accused. An energetic prosecutor will sum up a case in vigorous style. From time immemorial rhetoric, figures of speech, and descriptive phrases have been accepted as fitting for presenting facts and argument to support a theory of guilt or innocence. So long as counsel does not depart from the facts and reasonable inference, he is within his rights. The state's attorney, in summing up, did not transgress his privilege of fair comment by stating that the defendants were, in his opinion, guilty, by giving the jury to understand that his belief was based on something known to him outside the testimony (Compare *State* v. *McCormack,* 93 *N. J. L.* 287, 289; 107 *Atl. Rep.* 475). The prosecutor's summation was, in our judgment, within the facts and the immediate inferences therefrom. *Cf. State* v. *Perry,* 91 *N. J. L.* 539, 543; *State* v. *Lange,* 75 *Id.* 1; 66 *Atl. Rep.* 942; *affirmed,* 75 *N. J. L.* 502; 68 *Atl. Rep.* 210.

Our statute (*N. J. S. A.* 2:97-13) permits proof of a witness' conviction of any crime for the purpose of affecting his credibility. This has been our law, in substance, since 1900 (Cf. chapter 150, page 362, *Pamph. L.* 1900). The court, in charging the jury, instructed them that Duggan's criminal record was introduced "for the purpose of testing this defendant's credibility" and not as substantive proof that he was guilty of the crime for which he was on trial. We perceive no error here.

Under point 18 (assignment 80) it is argued that the learned trial judge erred in denying motion in arrest of judgment, the contention being that the final verdict was not the true one. The facts, as gathered from the record, are as follows: The jury retired to consider the case at 5:45 on Saturday afternoon, May 3. At nine o'clock that night the jury went out to dinner. The court sent for the jury at 12:50 A. M. to ascertain if a verdict had been reached. On receiving a negative answer, the judge advised the jury that he would remain at the court house until 1:30 A. M. and that he would return to court the following morning (Sunday) at ten o'clock. He did so and at 10:45 in the morning the jury was called in and asked if a verdict had been arrived at. Thereupon the foreman said that the jury had arrived at a verdict as to one defendant but not as to the other. The court asked the foreman whether there was a possibility of arriving at a verdict as to the second defendant and was told that if the jury had more time they could arrive at a verdict. The court then sent the jury back for further deliberation and finally, at 5:45 in the afternoon, the jury returned a verdict of guilty against both defendants. The argument is that the jury had reached a verdict as to one defendant at 10:45 in the morning and that the court's duty then and there was to accept the verdict as to one and permit the jury to retire to deliberate further as to the other defendant. This argument is not valid. The jury said that they could determine the case as to both defendants if allowed further time. The defendants were on trial together on one indictment containing but one count. No announcement was made by the jury as to which defendant's case had been concluded in their deliberations.

The jury might quite properly have convicted one defendant and acquitted the other but no indication was made that such thought was in their minds. It is not said that the fate of either individual was affected by the jury's failure to announce their determination or verdict as to one defendant when such finding was arrived at. Where several defendants are named in a single indictment it seems to us to be much more orderly that the verdict should be announced in its entirety when the jury has completed their deliberations rather than piece-meal. At no time did the jury attempt to tender their finding as to one defendant—merely stated a fact, that they were in agreement as to one and that they could reach agreement as to both if given additional time. We perceive no irregularity in that which was done in the circumstances.

The final point outlined in the brief for the plaintiffs in error is that the verdict was against the weight of the evidence. But this, as we have pointed out, is not available to the plain-tiffs in error. Consequently we do not pass upon the weight of the evidence.

The judgment should be affirmed.